**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Raymond P. Moore**

Civil Action No. 13-cv-01564-RM

SARA CREED,

      Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

      Defendant.

---

ORDER

---

    This matter is before the Court on Plaintiff Sara Creed's ("Plaintiff") request for judicial review pursuant to 42 U.S.C. § 405(g). (ECF No.1.) Plaintiff challenges the final decision of Defendant, Commissioner of the Social Security Administration ( the "Commissioner"), denying Plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). For the reasons set forth below, the Court AFFIRMS the denial of Plaintiff's application.

**I.**      **BACKGROUND**

    **A.**    **Relevant Medical Evidence**[1]

    Plaintiff alleges that she became disabled on April 13, 2010, at the age of thirty-two. (Tr. 38.) Plaintiff has at least a high school education and is able to communicate in English. (*Id.* at 25, 142, 144.) She has past relevant work experience as an administrative assistant, a receptionist, a medication clerk, a dry cleaning attendant and a production worker. (*Id.* at 25, 57-

---

[1] The Court will not discuss impairments or conditions that are not at issue in Plaintiff's opening brief.

58.)  Plaintiff claims to have become disabled based on various psychological and physiological impairments that impose both exertional and non-exertional limitations, including organic mental disorder, anxiety disorder, personality disorder, cyst of thyroid, Hashimoto thyroiditis, patent foramen ovale, scoliosis, migraine headaches and a reported history of cerebrovascular accident. (*Id*. at 20-21.)  Of particular importance in this appeal is Plaintiff's medical history regarding her migraines, which is described below.

The record reveals that Plaintiff reported experiencing daily headaches as far back as 2007.  (*See id.* at 344.)  An MRI of Plaintiff's brain on November, 14, 2007 revealed "areas of high signal intensity" and white matter that were noted potentially to be "associated with migraine headaches" among other potential causes.  (*Id.* at 587.)  In June, 2008, Plaintiff reported that her headaches had improved and had been occurring "intermittently" over the past six months.  (*Id.* at 348-49.)  In December, 2008, Plaintiff again reported that her headaches had been stable over the past six months.  (*Id.* at 350-51.)  Plaintiff reported that she was only experiencing migraine headaches about once every three months on average.  (*Id.*)  Plaintiff reported that she remained physically active and was able to run up to two miles without symptoms.  (*Id.*)

In January, 2010, Plaintiff received a psychological examination by Victor Neufeld, Ph.D.  (*Id.* at 217-21.)  Plaintiff reported that she experienced severe headaches during that examination, but that she was not having any pain as of the time of the examination.  (*Id.* at 219.)  In February, 2010, Plaintiff again reported experiencing intermittent headaches.  (*Id.* at 260.)  Plaintiff's physician noted that Plaintiff was not currently taking any prescription treatment for her headaches but had previously taken Advil.  (*Id.*)

2

However, on February 14, 2010, Plaintiff sought emergency treatment for a headache that had lasted for several days and had not lessened with medication. (Tr. 227-28.)  Plaintiff reported that this headache was unlike previous headaches she had experienced, which were usually minor and were alleviated with anti-inflammatory medication. (*Id.*)  She stated that her current headache was the second worst headache of her life. (*Id.*)  Plaintiff also reported that she had experienced a stroke in the past. (*Id.*)  A CT scan of Plaintiff's brain was normal. (*Id.* at 228-30, 275.)  Plaintiff was given medications that helped relieve her symptoms. (*Id.* at 228.)  Plaintiff sought follow-up treatment for her headaches at Mountain View Medical Group on February 16, 2010. (*Id.* at 259.)  The attending physician noted that Plaintiff had recently discontinued taking Cymbalta, an anti-depressant, and indicated that Plaintiff's headache may have been caused by withdrawal symptoms. (*Id.* at 259.)  He recommended that Plaintiff resume taking Cymbalta. (*Id.*)  Plaintiff resumed taking Cymbalta and, in a March 2010 follow-up visit, reported that her daily headaches remained but were much improved. (*Id.* at 258.)

In August, 2010, Plaintiff again sought treatment for daily migraine headaches and was prescribed Midrin. (*Id.* at 322.)  In November, 2010, Plaintiff reported that she was still having headaches, but that Midrin had helped. (*Id.* at 320.)  Plaintiff was prescribed Topomax at that time, an anti-convulasant medication used to treat migraines. (*Id.*)  Later that month, an MRI of Plaintiff's brain revealed two stable white matter lesions that were unchanged from a prior MRI performed in November, 2007. (*Id.* at 333.)

In January, 2011, Plaintiff underwent a consultative physical examination performed by Lisa Hastie, M.D. (*Id.* at 291-95.)  Plaintiff's list of complaints included headaches; however, Plaintiff reported that she had not experienced any migraine headaches over the past month since she began taking Topamax. (*Id.*)  Plaintiff denied experiencing any neurological deficits relating

to her migraines.  (*Id.*)  Plaintiff further reported that her "medical problems do not affect her daily living as much as her bipolar disorder and her other psychiatric conditions." (*Id.* at 292.) Dr. Hastie assessed that Plaintiff did not require any functional limitations due to any physical impairment, but recommended a psychiatric evaluation be performed as it would be possible that a psychiatric diagnosis would affect her ability to function.  (*Id.* at 295.)

In February, 2011, Plaintiff again reported that her headaches were better with Topomax. (*Id.* at 319.)  However, in May 2011, Plaintiff reported having a migraine that had persisted constantly for approximately two weeks.  (*Id.* at 317.)  She was subsequently prescribed an increased dosage of Topomax.  (*Id.*)  Plaintiff reported that her migraines persisted at a June, 8, 2011 follow-up visit, but that they were not as severe as they had been previously.  (*Id.* at 316.) Plaintiff described her headaches during an August 1, 2011 doctor visit as akin to being "hit with [a] volleyball repeatedly" and that her experience of pain was an eight out of ten.  (*Id.* at 379.) Plaintiff again reported that Topomax had ameliorated much of her symptoms from migraines on August and September, 2011 doctor visits.  (*Id.* at 315, 384.)

An MRI taken of Plaintiff's brain in January, 2012 revealed three small signal abnormalities.  (*Id.* at 324.)  The radiologist's report noted that there were uncertainties as to whether these abnormalities could be detected in previous MRIs.  (*Id.*)  A letter from Kristen Graesser, M.D. of Colorado Neurology Specialists to Plaintiff's primary care physician states that these findings "are most typical of nonspecific changes seen in patients with migraine." (*Id.* at 589.)

**B.**     **Plaintiff's Testimony at The ALJ Hearing, The ALJ's Decision and Plaintiff's Appeal**

Plaintiff attended an administrative hearing before Administrative Law Judge ("ALJ")

David Mazzi on February 29, 2012.  (*Id.* at 34-62.)  Plaintiff testified that she worked as an administrative assistant through April, 2010, when she was fired.  Plaintiff testified that she was able to perform her job duties "okay" through the time leading up to her termination and "until the headaches and stuff came on," and that after that things "started going downhill."  (*Id.* at 38-39.)  Plaintiff further testified that she had experienced headaches even during the time she spent working as an administrative assistant, but explained that they were "real light" now that they were being treated with Topomax.  (*Id.* at 41, 56.)  She testified that the Topomax made her migraines "okay."  (*Id.* at 42.)

The ALJ issued an opinion on March, 8, 2012 denying Plaintiff's application.  (*Id.* at 18-27.)  Applying the five step sequential analysis set forth under 20 C.F.R. § 416.920(a), the ALJ found that Plaintiff was not disabled through the date of the ALJ's decision.  (*Id.* at 18-27.) [2]  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 13, 2010, Plaintiff's alleged disability onset date.  (*Id.* at 20.)  At step two, the ALJ found that Plaintiff had several "severe" impairments, including organic mental disorder, anxiety disorder, and personality disorder.  (*Id.* at 20-21.)  However, the ALJ determined that some of Plaintiff's alleged impairments would not be considered "severe," specifically Plaintiff's alleged migraine headaches, cyst of thyroid, Hashimoto thyroiditis, patent foramen ovale, scoliosis, and reported history of cerebrovascular accident.  (*Id.* at 21.)  The ALJ then proceeded to step three, finding that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the requirements of any per se disabling impairment.  (*Id.* at 21-23.)  The ALJ then computed Plaintiff's Residual Functioning Capacity ("RFC") as being able to perform work at

---

[2] Plaintiff's original alleged disability onset date was February 1, 2008, which she subsequently amended as April 13, 2010, the date she stopped working. (Tr. 38.) Although the ALJ referenced Plaintiff's original alleged disability onset date at certain points in his order (*see Id.* at 26), his analysis at step one correctly considered Plaintiff's amended onset date (*Id.* at 20) and the Court finds that the ALJ used the correct date when analyzing Plaintiff's application.

all exertional levels that involved simple, repetitive tasks equating to unskilled work with no more than occasional interaction with supervisors, co-workers and the public.  (*Id.* at 23-25.)  At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.  (*Id.* at 25.)  At step five, the ALJ relied in part on vocational expert ("VE") testimony to determine that Plaintiff could perform other jobs existing in significant numbers in the national economy.  (*Id.* at 26.)  The ALJ therefore determined that Plaintiff was not disabled under the Act.  (*Id.*)

Plaintiff timely filed a Request for Review with the Appeals Council on March, 23, 2013.  On April 10, 2013, the Appeals Council denied Plaintiff's appeal.  (*Id.* at 1-6.)  Plaintiff appealed that decision by bringing this lawsuit.  (ECF No. 1.)

## II.      LEGAL STANDARDS

### A.      Standard of Review

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied.  *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted).  Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion.  *Id.* (citation omitted).  "It requires more than a scintilla, but less than preponderance."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted).

Although a district court will "not reweigh the evidence or retry the case," it "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (citation omitted); *see also* 42 U.S.C. § 405(g).  Evidence is not substantial if it is overwhelmed by other evidence in the record.  *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (citation omitted).  In reviewing the

Commissioner's decision, the Court may not substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006) (citation omitted).  As the Tenth Circuit Court of Appeals observed in *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 480 (10th Cir. 1993), the ALJ also has a basic duty of inquiry to "fully and fairly develop the record as to material issues." *Id.* at 479-480 (citations omitted).  This duty exists even when the claimant is represented by counsel. *Id.* at 480 (citations omitted).

Also, "[t]he failure to apply the correct legal standard or to provide [a reviewing] court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (citation and internal quotation marks omitted); *see also Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (holding that "the Secretary's failure to apply the correct legal standards, or to show us that [he] has done so, are . . . grounds for reversal") (citation omitted).

### B.    Evaluation of Disability

The criteria to obtain DIB under Title II of the Act are that a claimant meets the insured status requirements, is younger than 65 years of age, files an application for a period of disability, and is under a "disability" as defined under Title II of the Act.  42 U.S.C. §§ 416(i), 423(a); *Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002); *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991).  In addition, the individual's disability must have begun before his or her disability-insured status has expired.  20 C.F.R. § 404.101(a); Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *8 (1983).

The Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment [that] can be expected to result in death or [that] has lasted or can be expected to last for a continuous period of not

7

[fewer] than twelve months."  42 U.S.C. § 1382c(a)(3)(A); *see also Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002).

There is a five-step sequence for evaluating a disability.  *See* 20 C.F.R. § 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (describing five-step analysis).  If it is determined that a claimant is or is not disabled at any point in the analysis, the analysis ends. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).  First, the claimant must demonstrate that he or she is not currently involved in any substantial, gainful activity.  20 C.F.R. § 416.920(a)(4)(i).  Second, the claimant must show a medically severe impairment or combination of impairments that significantly limits his or her physical or mental ability to do basic work activities.  *Id*. at § 416.920(a)(4)(ii).  Third, if the impairment matches or is equivalent to an established listing under the governing regulations, the claimant is judged conclusively disabled.  *Id*. at § 416.920(a)(4)(iii).  If the claimant's impairment does not match or is not equivalent to an established listing, the analysis proceeds to the fourth step where the claimant must show that the "impairment prevents [him or her] from performing work [he or she] has performed in the past."  *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (citations omitted); *accord* 20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is able to perform his or her previous work, he or she is not disabled.  20 C.F.R. § 416.920(a)(4)(iv).  Fifth, the Commissioner must demonstrate:  (1) that based on the claimant's RFC, age, education, and work experience, the claimant can perform other work; and (2) the work that the claimant can perform is available in significant numbers in the national economy.  *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987); *see also* 20 C.F.R. § 416.920(a)(4)(v).

## III.   ANALYSIS

The sole issue raised by Plaintiff on appeal is whether the ALJ erred in failing to find that Plaintiff's headaches would constitute a severe impairment under step two of the sequential analysis.  Specifically, the ALJ found that Plaintiff's migraines, among other claimed impairments, would not be considered severe "because these impairments do not more than minimally affect the claimant's ability to perform basic work functions."  (Tr. 21.)  Immediately following this assessment, the ALJ went on to state that "[a]ll impairments, regardless of severity, have been considered in assessing her residual functional capacity."  (*Id.*)  Because black letter law in the Tenth Circuit on this issue states that such error would be harmless so long as the impairment is still given due consideration by the ALJ at step four and five of his sequential analysis, we affirm the Commission's decision.

The Tenth Circuit has found that "[a]n error at step two of the sequential evaluation concerning one impairment is usually harmless when the ALJ . . . finds another impairment is severe and proceeds to the remaining steps of the evaluation."  *Grotendorst v. Astrue*, 370 Fed. App'x. 879, 883 (10th Cir. 2010) (citations omitted).   "This is because *all* medically determinable impairments, severe or not, must be taken into account at those later steps."  *Id.* (emphasis in original); *see Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error here became harmless when the ALJ reached the proper conclusion that [claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.");  *Oldham v. Astrue*, 509 F.3d 1254, 1256-57 (10th Cir. 2007) ("We can easily dispose of . . . arguments[] which relate to the severity of [claimant's] impairments.  The ALJ . . . made an explicit finding that [claimant] suffered from severe impairments.  That was all the ALJ was required to do in that regard.  [Claimant's] real complaint is with how the ALJ ruled at step

five."). Specifically, the Act mandates that the ALJ give consideration to all of a claimant's medically determinable impairments, severe or otherwise, throughout his sequential analysis:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.

20 C.F.R. § 404.1523; *see also* 20 C.F.R. § 404.1545(a)(2). In other words, regardless of the ALJ's determination at step two as to which of a claimant's impairments are severe, an incorrect finding as to the severity of any one impairment would be reversible error *only if* the ALJ then failed to consider that impairment when making his subsequent calculation of the claimant's RFC and following determinations at step four and five. *Grotendorst*, 370 Fed. App'x. at 884.

Here, the ALJ found at step two that Plaintiff had severe impairments in the form of an organic mental disorder, anxiety disorder, and personality disorder, but that Plaintiff's migraine headaches, cyst of thyroid, Hashimoto thyroiditis, patent foramen ovule, scoliosis, and reported history of cerebrovascular accident would not be considered severe. (Tr. 20-21.) In the same paragraph following this determination, the ALJ acknowledged that those non-severe impairments would still be considered in subsequent steps of his sequential analysis. *See Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) (a reviewing court should take "the lower tribunal at its word when it declares that it has considered a matter"); *Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988) (where ALJ's report "addresses" the claimant's various impairments, this was sufficient to infer that the ALJ had properly considered their combined effects without other indications to the contrary).

The ALJ then went on to provide ample discussion in his ruling that would indicate that Plaintiff's migraines were given due consideration in the formulation of Plaintiff's RFC, which

in turn was incorporated into the ALJ's determinations at steps four and five. (Tr. 21-25.) When calculating Plaintiff's RFC, the ALJ pointed to Plaintiff's testimony at the February 29, 2012 hearing that "her headaches have increased in number but that her medications helped." (*Id.* at 23.) The ALJ also pointed to an emergency room visit Plaintiff made in February, 2010, where she "was diagnosed with a headache, probable migraine." (*Id.* at 24.) The ALJ also considered the findings of Plaintiff's November, 2010 MRI, which revealed an impression of two stable sub-centimeter white matter lesions that remained unchanged from an examination in November, 2007. (*Id.*) The ALJ also pointed to the consultative evaluation Plaintiff received from Dr. Hastie in January, 2011. As noted by the ALJ, Dr. Hastie diagnosed Plaintiff as having migraine headaches, among other things, but found that Plaintiff did not have any exertional or non-exertional limitations. (*Id.*) Finally, the ALJ considered Plaintiff's January, 2012 MRI, which revealed the impression of cerebral white matter containing three small signal abnormalities without mass effect or contrast enhancement. (*Id.* at 25.) The ALJ discussed and weighed all of this evidence when calculating Plaintiff's RFC and concluded that Plaintiff's migraines, among her other impairments, still allows her to perform work at all exertional levels and that she retains the ability to engage in unskilled work that requires no more than occasional interaction with supervisors, co-workers and the public. (*Id.* at 23.)

Although not stated with specific reference to Plaintiff's migraines, the ALJ provided findings regarding the credibility of Plaintiff's report of the intensity, persistence and limiting effects of her symptoms that would also appear to apply to her migraines. (*Id.* at 25.) The ALJ found that Plaintiff's report of her daily activities would not comport with one describing the severity of symptoms Plaintiff purported to have, specifically that she is able to care for several young children at home. (*Id.*) The ALJ also found that Plaintiff had not received the type of

11

medical treatment that one would expect for a person alleged to have her severity of disability.
(*Id.*)  The ALJ further found that the severity of Plaintiff's alleged symptoms had not
significantly changed from 2007—when Plaintiff was still working—to the time Plaintiff alleged
to have become disabled in 2010, thus indicating that Plaintiff was able to work in spite of her
symptoms.  (*Id.*)  Finally, the ALJ found it compelling that none of Plaintiff's treating sources
had provided an opinion that Plaintiff "is disabled or even has limitations greater than those
determined" by the ALJ.  (*Id.*)

Relying on his calculation of Plaintiff's RFC and testimony received from the VE, the
ALJ found in step four of the sequential analysis that Plaintiff's limitation to occasional contact
with others would preclude her from performing her past relevant work.  (*Id.* at 25.)  Similarly,
the ALJ relied on Plaintiff's RFC and the VE's testimony in step five to find that Plaintiff
remains able to perform jobs existing in significant numbers in the national economy.  (*Id.* at 26.)
As stated above, the ALJ included substantial discussion of Plaintiff's migraines when
determining her RFC, which was in turn used to evaluate Plaintiff's ability to work at steps four
and five.

The ALJ's analysis described above clearly demonstrates that Plaintiff's migraines were
given due consideration in determining Plaintiff's RFC, which in turn was used in evaluating
Plaintiff's ability to work in steps four and five.  Indeed, the Act requires that "*all* medically
determinable impairments, severe or not, must be taken into account at those later steps."
*Grotendorst*, 370 Fed. App'x at 883 (emphasis in original); *see also* 20 C.F.R. § 404.1523; 20
C.F.R. § 404.1545(a)(2).  The Court finds that the ALJ did in fact fulfill the Act's requirements
and gave consideration to Plaintiff's migraines throughout his disability determination.  *Id.*
Thus, even if it were error for the ALJ to conclude that Plaintiff's migraines were not "severe,"

such error would be harmless.  *Grotendorst*, 370 Fed. App'x at 883; *Carpenter*, 537 F.3d at 1266; *Oldham*, 509 F.3d at 1256-57.

However, the Court further finds that the ALJ's determination that Plaintiff's migraines were not severe was based on substantial evidence.  Plaintiff testified before the ALJ that her migraines were well managed with medications.  Notes from various doctor visits record Plaintiff's report of the same.  Plaintiff's medical records also show that at least one of Plaintiff's episodes of severe migraine was likely the result of discontinuing medication, which was resolved when she resumed taking that medication.  None of Plaintiff's treating physicians opined that Plaintiff was functionally limited in any way as a result of her migraines, and at least one consultative evaluator reported that Plaintiff did not possess any functional limitations as a result of her migraines or other maladies.  The ALJ's determination that Plaintiff's migraines would not be "severe" as that term is defined by the Act was not error.

Plaintiff argues that the ALJ committed error when assessing her credibility, asserting that the record does not support the ALJ's contention that Plaintiff's ability to work in 2007 would tend to show that she would not currently be prevented from working due to her impairments.  (ECF No. 16 at 2.)  Plaintiff argues that there is evidence in the record demonstrating that Plaintiff's migraine headaches prohibited her ability to work effectively even in 2007.  (*Id.*)  However, Plaintiff's argument misses the mark.  The ALJ's assertion is factually accurate that, *in spite of* the physical symptoms Plaintiff was experiencing in 2007, she apparently was able to maintain her employment for three years until 2010 when her employment was terminated because she was not "organized enough."  (Tr. 38-39, 218.)  And as Plaintiff herself points out, the record contains evidence that in 2007, three years prior to her termination, Plaintiff's symptoms relating to her migraines were significant.  (Tr. 345, 384.)  The

fact that Plaintiff was able to work in 2007 despite the severity of her symptoms would provide

support for the contention that these same symptoms would not cause her to have allegedly

become disabled, and unable to work, in 2010.  *See Wall v. Astrue*, 561 F.3d 1048, 1068-69 (10th

Cir. 2009); *Cowan v. Astrue*, 552 F.3d 1182, 1191 (10th Cir. 2009).

Plaintiff also argues that the ALJ committed reversible error by failing to develop the

record with respect to Plaintiff's migraines.  (ECF No. 16 at 3.)  The Court disagrees, finding

that the lengthy record before the ALJ of over 600 pages of medical documents, chronicling over

five years of treatments Plaintiff received relating to her migraines and other medical problems is

ample evidence upon which the ALJ was able to base his disability determination.  Because

Plaintiff has not pointed to any specific evidence that is absent from the record that would have

led the ALJ to reach a different result, her argument fails.  *Branum v. Barnhart*, 385 F.3d 1268,

1271-72 (10th Cir. 2004) (ALJ's decision upheld where the plaintiff had "made no showing that

anything of significance is missing from the current record").

## IV.   CONCLUSION

Based on the foregoing, the Court AFFIRMS Defendant's denial of disability insurance

benefits.

Dated this 12th day of August, 2015

BY THE COURT:

RAYMOND P. MOORE
United States District Judge